# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN LARRY WILSON,<br><br>Defendant. | No. CR07-0033<br><br>REPORT AND RECOMMENDATION |

On the 29th day of March 2012, this matter came on for hearing on the First Supplemented and Substituted Petition for Warrant or Summons for Offender Under Supervision (docket number 98) filed by the Probation Office on March 13, 2012. The Government was represented by Assistant United States Attorney Dan Chatham. Defendant Martin Larry Wilson appeared in person and was represented by his attorney, JoAnne Lilledahl.

## I. RELEVANT FACTS AND PROCEEDINGS

On February 4, 2008, Defendant was sentenced to serve a 78-month term of imprisonment for possession of a firearm by a felon and domestic abuse misdemeanant, in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(9), and 924(a)(2). *See* docket number 52. Defendant was also ordered to serve a three-year term of supervised release upon his release from prison. On April 20, 2009, Defendant's sentence was vacated by the Eighth Circuit Court of Appeals and the case was remanded for resentencing. On August 10, 2009, Defendant was resentenced to a term of imprisonment of 41 months, to be followed by three years of supervised release. *See* docket number 79. The judgment and sentence were subsequently affirmed on appeal.

Defendant's term of supervised release commenced on September 21, 2010. Defendant failed to appear for a random urine sample on December 3, 2010 and March

23, 2011. Defendant told the Court at the instant hearing that he was working "from 8 to 5" at that time and does not have a valid driver's license, and that's why he missed the appointments. According to Defendant, he submitted urine samples in the evening of the following day. The supervised release violation worksheet confirmed that Defendant worked regularly from August 2010 through June 2011.

At 2:00 p.m. on December 7, 2011, a probation officer conducted an unannounced home visit at Defendant's residence. Defendant reported to the probation officer that he had consumed a "sip" of beer that afternoon. A preliminary breath test registered at .051. Defendant then admitted that he had consumed two beers. According to the First Supplemented and Substituted Petition, Defendant first told the probation officer that he had consumed alcohol "to deal with his anxiety issues," but then said he "was celebrating the completion of his divorce." At the instant hearing, Defendant admitted that he had "self-medicated" with alcohol to deal with stress, but denied that he told the probation officer that he was celebrating his divorce. As a consequence of Defendant's consumption of alcohol, the Court ordered Defendant to serve two consecutive weekends in a designated facility. Before a facility could be designated, however, Defendant was arrested for domestic abuse assault.

On December 26, 2011, Defendant was arrested in Winnebago County, Iowa, and charged with domestic abuse assault-third or subsequent offense (a Class D felony). The alleged victim subsequently recanted, however, and the charge was dismissed on March 7, 2012. At the time of hearing, the Government withdrew the allegation that Defendant was guilty of a new law violation by committing domestic abuse assault.

Defendant admits, however, that he committed new law violations while being held in the Winnebago County Jail. On December 29, 2011, Defendant violated a no-contact order by attempting to mail a letter from jail to the alleged victim. Defendant pleaded guilty to the offense and was sentenced on February 13, 2012 to serve seven days in jail, with credit for time already served. Defendant was charged again with the same offense

when he called the alleged victim from jail on February 19, 20, 22, 25, 26, 28, and 29. Defendant pleaded guilty to five counts of violating a no-contact order, with five additional counts dismissed. Defendant was sentenced on March 12, 2012 to seven days in jail on each count, to be served concurrently. Defendant advised the Court at the instant hearing that he is "in the process" of trying to withdraw his guilty pleas.

On March 14, 2012, Defendant was arrested on the warrant issued in the instant action and has been detained in federal custody since that time. (Defendant has been held in state or federal custody since his arrest on December 26, 2011.)

## II. DISCUSSION

The parties agree that Defendant's violations are "grade C" violations and revocation of Defendant's supervised release is not mandatory. The guideline range of imprisonment under these circumstances is 5-11 months, pursuant to United States Sentencing Guideline § 7B1.1 The maximum statutory term of imprisonment is two years and the maximum statutory term of supervised release is three years.

The probation office recommends revocation of Defendant's supervised release and imposition of an 11-month term of imprisonment. It is further recommended that following Defendant's imprisonment, he be placed on supervised release until his original end date (September 20, 2013). The probation office recommends that as a condition of Defendant's supervised release, he be placed at a halfway house. It is also recommended that Defendant be ordered to have no contact with Colleen Doyle. The Government is asking that Defendant's supervised release be revoked, with imprisonment ordered "toward the top" of the sentencing guideline range. Defendant asks that his supervised release be continued, with appropriate modification. Defendant suggests additional weekends in jail or placement at a halfway house.

Defendant has been under supervision since September 2010. He failed to appear for random urine tests in December 2010 and March 2011, ostensibly because of work conflicts. In December 2011, it was discovered through an unannounced home visit that

Defendant was consuming alcohol. Defendant initially minimized his consumption, but after a breath test of .051, Defendant admitted consuming two beers. Defendant consented to a modification of his supervised release, and the Court ordered two weekends in jail. Before Defendant could serve that time, however, he was arrested on an unrelated charge. While Defendant was in jail on the new charge, he violated a no-contact order on at least six occasions. The last five violations occurred *after* Defendant had pleaded guilty and was sentenced on the first violation.

I believe that revocation of Defendant's supervised release is appropriate. Defendant's supervised release has been modified once already due to his failure to comply with the Court's Order. While incarcerated on a separate charge, Defendant repeatedly violated a no-contact order. Most significantly, after Defendant was sentenced for the first no-contact violation, he continued to contact the alleged victim. These repeated violations demonstrate Defendant's belief that he is not required to comply with the law or the Court's orders.

I respectfully recommend that Defendant's supervised release be revoked, with a six-month term of imprisonment imposed. I recommend that following his imprisonment, Defendant be placed on supervised release until his original end date of September 20, 2013. As a condition of his supervised release, Defendant should be required to reside at an appropriate residential facility. Defendant should be ordered to have no contact with Colleen Doyle.

### *III. RECOMMENDATION*

For the reasons set forth above, it is respectfully **RECOMMENDED** that Defendant's supervised release be revoked and that he be sentenced to serve a six-month term of imprisonment. It is further **RECOMMENDED** that following imprisonment the Defendant be placed on supervised release until September 20, 2013, with a condition of supervised release to include placement at a residential facility. It is further **RECOMMENDED** that Defendant be ordered to have no contact with Colleen Doyle.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on March 29, 2012.*

DATED this 30th day of March, 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA